IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH COLEMAN, | ) | |
| | ) | Civil Action No. 14 – 1065 |
| Petitioner, | ) | |
| | ) | District Judge Nora Barry Fischer |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| BOBBY L. MEEKS, | ) | |
| | ) | |
| Respondent. | ) | |

# REPORT AND RECOMMENDATION

## I.  RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss the Case (ECF No. 17) be granted and that the Petition for Writ of Habeas Corpus filed by Petitioner Keith Coleman (ECF No. 2) be dismissed as moot, or, in the alternative, denied.

## II.  REPORT

Before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Keith Coleman pursuant to 28 U.S.C. § 2241. He contends that the Bureau of Prisons ("BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, *see*, *e.g.*, United States v. Wilson, 503 U.S. 309 (1992), should award him prior custody credit for the time he spent serving his state sentence from October 1, 2009, the date of his arrest by the Pittsburgh Police Department, through October 1, 2013, the date he was released by state authorities to the exclusive custody of the United States. For the reasons set forth below, the Petition should be dismissed as moot, or, in the alternative, denied.

1

### A. Relevant Background

On October 1, 2009, Coleman was arrested by the Pittsburgh Police Department and subsequently charged with Carrying a Firearm Without a License at case number CP-02-CR-0016919-2009 in the Allegheny County Court of Common Pleas. (ECF No. 7-2 at ¶ 3.) That same day, a Petition on Supervised Release was filed in this Court, requesting the issuance of a bench warrant for Coleman's arrest for violating the conditions of his Supervised Release at case number 2:06-CR-00027-001. As a result, a warrant was issued for Coleman's arrest on October 7, 2009. Id. at ¶ 4.

On January 11, 2011, Coleman was sentenced to a 3 to 6 year term of confinement in CP-02-CR-0016919-2009. Id. at ¶ 5. He was received at the Pennsylvania Department of Corrections ("DOC") to begin his 3 to 6 year term of imprisonment on January 28, 2011. Id. at ¶ 6.

On March 21, 2011, this Court issued a federal writ of habeas corpus *ad prosequendum* from the Pennsylvania DOC. Id. at ¶ 7. On April 29, 2011, while still in state custody, Coleman was "borrowed" from the Commonwealth pursuant to the federal writ of habeas corpus *ad prosequendum*. Id. at ¶ 8.

On April 29, 2011, Coleman was sentenced in 2:06-CR-0027-001 to a 24-month term of imprisonment for violating the conditions of his Supervised Release, and the sentence was ordered to run consecutive to Coleman's state term of incarceration in CP-02-CR-0016919-2009. Id. at ¶ 9. After sentencing on April 29, 2011, the United States Marshals Service returned Coleman to the custody of the Commonwealth, placing the federal judgment and commitment as a detainer, and thereby satisfying the federal writ. Id. at ¶ 10.

On February 21, 2013, the Pennsylvania Superior Court vacated Coleman's sentence and remanded his case for resentencing. He was subsequently sentenced to a 2 to 4 year term of imprisonment on May 1, 2013. The minimum expiration date of his 2 year term was October 1, 2011, and the maximum expiration date of the 4 year term was October 1, 2013. Id. at ¶ 6.

On September 17, 2013, while still in state custody, the Court of Common Pleas of Allegheny County granted Coleman's petition for post-conviction relief in CP-02-CR-0016919-2009 and ordered a new trial. Id. at ¶ 15. Shortly thereafter, on October 8, 2013, Coleman was released to the "exclusive" custody of the United States Marshals, Western District of Pennsylvania, on their detainer to begin service of his federal sentence. Id. at ¶ 11.

On August 12, 2014, Coleman filed the instant Petition in this Court, claiming that he should receive credit against his federal sentence for the time he spent serving his state sentence from the date of his arrest on October 1, 2009, through October 1, 2013, the date he completed his state sentence and was released to the "exclusive" custody of the United States Marshals. Id. at ¶ 14.

On October 27, 2014, Respondent requested a stay of these proceedings pending the outcome of Coleman's state criminal trial.[1] (ECF No. 7.) The stay was granted on November 18, 2014, pending the outcome of Coleman's re-trial and sentencing in CP-02-CR-0016919-2009. (ECF No. 10.)

Instead of proceeding to trial, Coleman decided to plead guilty in CP-02-CR-0016919-2009, and, on April 21, 2014, the trial court again imposed a 2 to 4 year sentence, specifically

---

[1] Coleman's situation was unique because it called into question whether he was entitled to prior custody credit against his federal sentence for the time he served in state custody.

3

noting that Coleman should be given credit against his state sentence for the time he spent in custody from October 1, 2009, through October 1, 2013. (ECF No. 17 at ¶ 6.)

Because Coleman's state proceedings had concluded, Respondent filed a Motion to Reopen and Dismiss this Case on May 6, 2015. (ECF No. 17.) The stay was lifted by Order dated May 7, 2015. (ECF No. 18.)

Coleman was released from the custody of the BOP on May 12, 2015.

B. **The Petition is Moot**

A prisoner may seek federal habeas relief only if he is in custody in violation of the constitution or federal law. 28 U.S.C. § 2254(a); Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). The purpose of a writ of habeas corpus is to challenge the legal authority under which a prisoner is held in custody. Heck v. Humphrey, 512 U.S. 477 (1994); Allen v. McCurry, 449 U.S. 90 (1980) (the unique purpose of habeas corpus is to release the applicant for the writ from unlawful confinement); Wolff v. McDonnell, 418 U.S. 539 (1974) (basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom); Preiser v. Rodriguez, 411 U.S. 475 (1973); United States v. Hollis, 569 F.2d 199, 205 (3d Cir.1977). The writ supplies the mechanism by which prisoners may challenge the length of their custodial term. Fields v. Keohane, 954 F.2d 945, 949 (3d Cir.1992); Barden v. Keohane, 921 F.2d 476 (3d Cir.1991). The remedy is to free an inmate from unlawful custody.

However, Article III of the United States Constitution limits the jurisdiction of the federal courts to cases or controversies. *See* Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); *see also* Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 810-11 (3d Cir. 1989)

("Federal courts, having jurisdiction only to decide actual cases and controversies, are 'without the power to decide questions that cannot affect the rights of litigants in the case before them'") (citation omitted). Therefore, a case becomes moot when there is no viable legal issue left to resolve. *See* Powell v. McCormick, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the court unable to grant a party the relief requested, the case must be dismissed as moot. Blanciak v. Allegheny Ludlum Co., 77 F.3d 690, 698-99 (3d Cir. 1996).

Generally, a petition for habeas corpus relief becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition. Lane v. Williams, 455 U.S. 624 (1982). In this case, the Court takes judicial notice that Coleman was released from the custody of the BOP on May 12, 2015. As such, there is no longer a live case or controversy, and, consequently, the Petition is now moot. However, for the reasons that follow, Coleman would not be entitled to the relief he seeks even if this matter was not moot.

### C. Federal Sentence Computation

Respondent, whose Motion to Dismiss was filed prior to Coleman's release from BOP custody, submits that the Petition should be dismissed because Coleman has already received credit against his state sentence for the time he seeks, and 18 U.S.C. § 3585(b) prevents the BOP from awarding double credit.

A federal prisoner's sentence calculation is governed by 18 U.S.C. § 3585, Calculation of a term of imprisonment. Paragraph (a) of the statute governs the date upon which a prisoner's sentence commences and paragraph (b) governs credit for time spent in official detention prior to the date the sentence commences. Thus, in any computation of a federal sentence, two separate decisions must be made: (1) when the federal sentence commences and (2) to what extent the defendant can receive credit for time spent in custody prior to commencement of his or her

sentence. Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), *aff'd*, 100 F.3d 946 (3d Cir. 1996). *See also* Dutton v. U.S. Attorney General, 713 F.Supp.2d 194, 199 (W.D.N.Y. 2010). BOP policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual (PS 5880.28).[2]

1. Commencement of a Federal Sentence

The date upon which a federal sentence commences is controlled by 18 U.S.C. § 3585(a), which provides as follows:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP has interpreted § 3585(a) such that it will not commence a federal sentence earlier than the date on which it was imposed. *See* PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). *See also* Rashid v. Quintana, 372 F. App'x 260, 262 (3d Cir. 2010). Thus, a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served. Rashid, 372 F. App'x at 2, n.7; Peterson v. Marberry, Civil No. 07-56, 2009 WL 55913 at *3-5 (W.D. Pa. Jan.5, 2009) (citing PS 5880.28, Chapt. 1, Pages 12-13, and explaining in detail BOP policies regarding § 3585(a)).

The threshold issue in determining the commencement date of a federal sentence is whether the defendant was in primary federal or primary non-federal custody at the time the

---

[2] BOP programs statements are available in full on its website, www.bop.gov.

federal sentence is imposed.[3] The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12–13.

2. If the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A–33; PS 5160.05, Pages 2–12.

---

[3] The common law rule of "primary custody" or "primary jurisdiction" was developed to assist sovereigns in instances where a defendant may be subject to multiple sentences imposed by more than one jurisdiction. The primary custody doctrine was recognized by the United States Supreme Court in Ponzi v. Fressden, 258 U.S. 254 (1922), and developed to provide different sovereigns (in this case the state and federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws.

In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. *See*, *e.g.*, Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982). Primary custody remains vested in the sovereign that first arrests the individual until it "relinquishes its priority by, *e.g.*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa.), *aff'd*, 100 F.3d 946 (3d Cir. 1996). Producing a state prisoner under writ of habeas corpus *ad prosequendum* to answer federal charges does not relinquish state custody. Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir. 1991); Salley v. United States, 786 F.2d 546, 547-48 (2d Cir. 1986) (defendant produced and sentenced in federal court via writ of habeas corpus *ad prosequendum* did not begin to serve consecutive federal sentence until delivered into federal custody).

7

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive* to any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12–13, 31–33; *see also* PS 5160.05, Pages 2–12.

The third scenario is what occurred in Coleman's case. He was in the primary custody of the Commonwealth of Pennsylvania on the date his federal sentence was imposed. He came into federal custody solely on a writ of habeas corpus *ad prosequendum*. See DeJesus v. Zenk, 374 F. App'x 245, 246 (3d Cir. 2010) (quoting Rios v. Wiley, 201 F.3d 257, 275 (3d Cir. 2000) ("A writ of habeas corpus *ad prosequendum* "merely 'loans' the prisoner to the federal authorities."). Additionally, when he was sentenced in 2:06-CR-00027-001 for violating the conditions of his Supervised Released, the Federal Court was clear in its intent for Coleman's federal sentence to run consecutively to the sentenced imposed in CP-02-CR-0016919-2009 for Carrying a Firearm Without a License. As such, Coleman's federal sentence could not commence until he was released to the exclusive custody of the United States Marshals after the expiration of his state sentence. In this case, Coleman's state sentence expired on October 1, 2013, and he was released to the exclusive federal custody of the United States Marshals on October 8, 2013. Thus, his federal sentence did not commence until October 8, 2013.

2. Prior Custody Credit

The second calculation in a sentence computation is to determine whether and to what extent a prisoner is entitled to prior custody credit. Prior custody credit is governed by 18 U.S.C. § 3585(b), which provides as follows.

(b) Credit for prior custody.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

8

> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> That has not been credited against another sentence.

18 U.S.C. § 3585(b). The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007); Chambers, 920 F. Supp. at 623 ("Section 3585 does not permit credit on a federal sentence for time served and credited against another sentence.").

For purposes of Coleman's federal sentence computation, the conduct connected with his federal offense was deemed to have commenced on October 1, 2009 (the date of his arrest). Under § 3585(b), only time that he served in official detention from that date through October 7, 2013 (the day before his federal sentence commenced), may be considered for treatment as federal presentence credit. The BOP determined that Coleman was not entitled to any credit under § 3585(b) for October 1, 2009, through October 1, 2013, because all of the time he served in official detention during that time was already credited against his state sentence. Coleman was, however, awarded a total of 54 days of prior custody credit from March 21, 2009, through May 7, 2009, for the days he over-served the original term, and from October 2, 2013, the date after he completed his state sentence, to October 7, 2013, the date prior to being released to the exclusive federal custody of the United States Marshals.

9

Coleman believes that his federal sentence should be credited with the time he spent serving his state sentence from October 1, 2009, through October 1, 2013, because his conviction in CP-02-CR-0016919, 2009 was vacated.  However, a review the records in CP-02-CR-0016919-2009 reveal that the Court of Common Pleas of Allegheny County did not vacate the indictment.  Instead, Coleman was granted a new trial.  He ultimately decided to plead guilty to the charge, and, on April 21, 2014, the court imposed a 2 to 4 year sentence, specifically noting that Coleman should be given credit against his state sentence for the time he spent in custody from October 1, 2009, through October 1, 2013.  Because the newly imposed sentence was identical to the previously imposed sentence, and Coleman received credit against his state sentence for the time period at issue, Coleman was not entitled to receive any additional prior custody credit for this time period since it would be a double credit in violation of § 3585(b).  Consequently, even if the Petition was not moot, it should be denied nonetheless.

## III.    CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss the Case (ECF No. 17) be granted and that the Petition for Writ of Habeas Corpus filed by Petitioner Keith Coleman (ECF No. 2) be dismissed as moot, or, in the alternative, denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, Petitioner shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto.  Petitioner's failure to file timely objections will constitute a waiver of his appellate rights.

Dated:  July 28, 2015.

/s/ Lisa Pupo Lenihan  
Lisa Pupo Lenihan  
United States Magistrate Judge

cc: Keith Coleman  
94328  
Allegheny County Jail  
950 Second Avenue  
Pittsburgh, PA 15219

Counsel of record